Corey Dawan MORRISON, Appellant

v.

The STATE of Texas, Appellee.

Nos. 14–02–00924–CR, 14–02–00925–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 19, 2004.

Clyde Williams, Houston, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant Corey Dawan Morrison challenges his convictions for possession with intent to deliver a controlled substance and possession of a firearm by a felon. In three points of error, appellant argues: (1) the trial court erred when it denied his motion to suppress evidence because the evidence was obtained during an illegal search; (2) he received ineffective assistance of counsel; and (3) the prosecutor assaulted appellant during her closing argument in the punishment phase of trial. We affirm.

## I. Factual and Procedural Background

Officer K.Y. King of the Houston Police Department's Narcotics Division obtained a combination search and arrest warrant on January 30, 2002, after a confidential informant purchased cocaine from a man known as "Gucci." The warrant authorized the arrest of "any person(s)[ ] including but not limited to . . . [']Gucci[']," and the search of a business known as Video 2000, where the informant had purchased the drugs. The officer conducting surveillance for the narcotics division monitored activity just prior to the raid at Video 2000, which was located in a strip center. He testified that, shortly after surveillance began, "Gucci," later identified as Kenneth McDonald, left the store for approximately 20 minutes. McDonald had returned and was in the video store when a white Escalade arrived. At this point, the raid team was en route to execute the warrant. Two males (one later identified as appellant) and a female exited the vehicle and entered the store. McDonald then left Video 2000 and walked to a convenience store in the same strip center. The raid team arrived, took McDonald into custody at the convenience store, and brought McDonald back with them to Video 2000.

The four individuals in the video store (McDonald, appellant, another male, and one female) were told to lay on the floor while officers performed a search of the premises. Accounts of what occurred next differ. According to testimony from at least one of the officers, the individuals were, at some point during this process, patted down, handcuffed, and placed in chairs. During the suppression hearing, appellant testified that he was never placed in a chair, but was instead on his knees. Officer King testified that she then noticed appellant "digging around" behind him and told him to be still. Sergeant Garcia, whose primary objective was to secure the scene, also testified that appellant had his hands behind his back "as if trying to place his hands . . . in the back of his pants." Officers King and Massey notified Officer Siewert that appellant was told several times to "quit digging in the rear of his pants." At the suppression hearing, appellant denied that he was ever "digging" in his pants.

When appellant apparently refused to remain still, Officers Siewert and Massey took him to a back room of the store where the adult movies were displayed. Once in the room, Officer Siewert testified that he pulled appellant's pants back and observed a piece of plastic protruding from appel-

lant's buttocks.[1] At the time, three other members of the raid team were present. Officer Siewert testified that he then had appellant pull his pants down and bend over. He retrieved the plastic bag, the contents of which were later identified as "rocks" of crack cocaine. During this period, appellant was resisting the officers and, consequently, the officers had to physically bend him over to retrieve the bag. Appellant claimed, during the suppression hearing, that officers were holding the bag against his buttocks, he could not reach it, and it did not belong to him. After recovery of the bag, appellant was placed under arrest. While conducting the search of the premises, the officers also seized several guns and body armor from the video store.

Appellant was charged by indictment with possession with intent to deliver a controlled substance and with possession of a firearm by a felon. A jury found appellant guilty of both offenses and, after finding two enhancement paragraphs to be true, assessed punishment at forty-five years' confinement for possession of a firearm by a felon and seventy-five years' confinement for possession with intent to deliver a controlled substance.

Appellant filed a motion for new trial on September 23, 2002, alleging prosecutorial misconduct, jury misconduct, and trial court error in instructing the jury on the

law.[2] The trial court denied the motion by written order the following day. The trial court then held a hearing on the same motion on January 7, 2003, and again denied the motion. In doing so, the trial court issued findings of fact and conclusions of law.

## II. Analysis and Discussion

### A. Motion to Suppress

In his first point of error, appellant contends the police did not have reasonable suspicion or justification to detain and search him and, by doing so, violated his Fourth and Fourteenth Amendment rights under the United States Constitution and article I, section 9 of the Texas Constitution.[3]

 In reviewing a trial court's ruling on a defendant's motion to suppress, an appellate court must first determine the applicable standard of review. The Court of Criminal Appeals has made clear that while appellate courts should afford almost total deference to the trial court's determination of the historical facts, mixed questions of law and fact not turning upon an evaluation of credibility and demeanor are to be reviewed *de novo*. *Guzman v. State*, 955 S.W.2d 85, 87–88 (Tex.Crim.App.1997). Specifically, questions of reasonable suspicion and probable cause should be re-

---

1. Although appellant's brief states that Officer Siewert conducted an additional patdown prior to pulling appellant's pants back, it is unclear from the record when and where this additional patdown occurred. Officer Siewert testified as follows at trial:

 The potential—when we—when I initially made contact with him, it was just a patdown search to ensure that he didn't have any weapons. Some weapons are very small, so I didn't know what he had in his—in the back of his pants. I just wanted to check it out.

2. The record indicates that appellant filed a second motion for new trial on the same day. The second motion appears to be identical to the first.

3. Appellant does not state specifically which pieces of evidence the trial court erred in admitting. Because the weapons and body armor were obtained during the search of the video store and appellant does not contest the validity of the warrant to search the premises, we will only address this issue with regard to the contents of the plastic bag obtained during the search of appellant.

viewed *de novo* on appeal. *Id.* at 87. This is because the trial judge is not in a better position than the reviewing court to make that determination. *Id.* Similarly, whether a defendant was "detained" within the meaning of the Fourth Amendment is a mixed question of law and fact that is reviewed *de novo.* *See Hunter v. State,* 955 S.W.2d 102, 105 n. 4 (Tex.Crim.App. 1997).

### 1. *The Detention*

 As part of his first issue, appellant contends that his mere presence on the premises during the execution of the search warrant did not justify his detention upon the arrival of the raid team.

 Pursuant to the United States and Texas Constitutions, a defendant is detained if, from his or her perspective, there has been such a display of official authority that a reasonable person would not have felt that he was free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Chambers v. State,* 866 S.W.2d 9, 19 (Tex. Crim.App.1993). The record from the hearing on the motion to suppress indicates that when the raid team entered Video 2000 through the Success Entertainment entrance, all of the individuals in the store, including appellant, were handcuffed and remained in the store while officers executed the search warrant. Appellant testified they were commanded to lay on the ground; Officer Siewert could not recall whether it occurred in this instance, but stated that he requires people to get on the ground when he is conducting search warrants. Under these circumstances, a reasonable person in appellant's position would not have believed that he was free to leave and, thus, a detention occurred.

 When a search warrant is issued for a particular residence, a judicial officer has made an objective determination that there is probable cause to believe someone in the residence is committing a crime. *Michigan v. Summers,* 452 U.S. 692, 703–04, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Therefore, when the warrant is executed, a person who is an occupant of the premises may be detained for the duration of the search. *Id.* This limited exception to the probable cause requirement does not, however, automatically extend to those who are merely on the premises at the time of the execution of the search warrant. *Lippert v. State,* 664 S.W.2d 712, 721–22 (Tex. Crim.App.1984).

Appellant relies heavily on *Lippert* for the proposition that, like in *Lippert,* he was merely on the premises, the combination arrest and search warrant does not in any way describe or refer to him,[4] and, therefore, the officers were not justified in detaining him absent probable cause. In *Lippert,* the Court of Criminal Appeals found that the combination search and arrest warrant, in addition to the supporting affidavit, did not contain any reference to appellant or any information which would constitute probable cause that he pos-

---

4. The warrant authorized the search of Video 2000 and the arrest of "any person(s), including but not limited to a B/M known only as 'Gucci'," which could have arguably included appellant; however, the United States Supreme Court has noted that the Fourth Amendment does not permit "open-ended" or "general" warrants. *See Ybarra v. Illinois,* 444 U.S. 85, 91, 92 n. 4, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (stating that search or seizure of person must be supported by probable cause particularized with respect to that person, but declining to consider situation where warrant authorizes search of unnamed persons in place and is supported by probable cause to believe persons who will be there will be in possession of drugs). Whether this is an open-ended or general warrant is not before us on appeal because appellant does not contest the validity of the warrant.

sessed a controlled substance. *Id.* at 716. The court further concluded that appellant's mere presence on the premises at the time of the execution of the search warrant, without more, did not authorize his detention and subsequent frisk or search. *Id.* at 721–22. According to *Lippert,* to justify the detention and search of a person, other than an occupant, who is present on the premises during the execution of a valid search warrant, there must be some independent factors, other than mere presence, that tie the person to the unlawful activities on the premises. *See id.*

■ Even if the combination arrest and search warrant does not refer to appellant, the *Lippert* case is distinguishable from the facts before this court. In *Lippert,* the appellant was not in the residence or on the premises when the search for narcotics began, but rather arrived 15 to 30 minutes after the raid team commenced execution of the warrant. *Id.* at 715. In this case, appellant was inside the video store when the raid team arrived. An officer executing a warrant may temporarily detain a party to determine whether the individual is an occupant of the premises being searched. *See Salazar v. State,* 893 S.W.2d 138, 142 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd, untimely filed) (stating that appellant's presence on and flight from the premises were specific and articulable facts to give rise to inference that appellant was occupant). In this case, appellant testified at the suppression hearing that he was taking inventory when the officers arrived at the store. According to the testimony at trial, officers were not aware of it at the time, but appellant is the co-owner of the business. Even without this knowledge, it would have been reasonable to infer that someone in the process of taking inventory inside the store is more than someone merely on the premises.

Therefore, appellant's presence coupled with further evidence linking him to the business were sufficient to justify appellant's detention as an occupant of the premises.

In *Michigan v. Summers,* the United States Supreme Court cited several justifications for detaining an occupant of a premises being searched for contraband pursuant to a valid warrant, namely (1) preventing flight in the event incriminating evidence is found; (2) minimizing the risk of harm to the officers; and (3) conducting the search in an orderly fashion. *See Summers,* 452 U.S. at 702–03, 101 S.Ct. 2587 (stating these factors in the context of a narcotics search at a residence). Here, Officer Siewert testified that the purpose of detaining everyone upon entry was for officer safety. He stated that all search warrants are considered high risk because officers encounter weapons more often than not. In addition, Officer Siewert testified that the strip center where the video store was located is a high drug-trafficking area. The *Summers* Court, while finding no special danger to the police in the situation before the Court, did note that the execution of a search warrant for narcotics is "the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Summers,* 452 U.S. at 702, 101 S.Ct. 2587. Because these same justifications were present in this case, appellant's detention when the raid team entered the video store did not violate his constitutional rights.

2. *The Initial Patdown and Subsequent Search*

■ Appellant also contends that the initial patdown and subsequent search violated his right to privacy because the officers did not have a reasonable belief that he was armed and presently dangerous.

■ Once an officer has validly detained an individual, the officer may conduct a limited protective search for weapons if he has a reasonable fear for his safety. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This does not mean the officer must be absolutely certain that the individual is armed. *See id.* Rather, the issue is whether a "reasonably prudent man in the [same] circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

In *Ybarra v. Illinois*, the Supreme Court considered a similar issue involving the execution of a warrant authorizing the search of a tavern and of a man named "Greg." *Ybarra*, 444 U.S. at 88, 100 S.Ct. 338. In that case, the appellant was a patron at the tavern. *Id.* The officers entered the tavern and one of the officers conducted a patdown of each customer in the tavern. *Id.* The Court concluded that a patdown of a tavern patron merely on the premises during the execution of a search warrant without a reasonable belief that *that patron* was armed and presently dangerous did not justify the search. *Id.* at 92–93, 100 S.Ct. 338 (emphasis added).

■ While the facts in this case are similar to those in *Ybarra*, there is an important distinction. In *Ybarra*, the initial frisk led to the second search when the officer first felt what he described as "a cigarette pack with objects in it." *Id.* at 88–89, 100 S.Ct. 338. The second search involved the officer's relocation and retrieval of the pack, which contained a substance that later turned out to be heroin. *Id.* at 89, 100 S.Ct. 338. In this case, the initial patdown did not reveal anything. It was not until the officers observed appellant "digging" in the back of his pants that they determined a second search was necessary. Therefore, although this search may have been akin to the one in *Ybarra*,

no evidence was produced from this search or led to the subsequent search. Article 38.23 requires the exclusion of evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America." Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon Pamph.2004). Evidence should be excluded once a causal connection between the illegality and the evidence is established. *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex.Crim.App. 2001). Thus, even if the initial frisk was improper, no evidence was obtained from the patdown, nor did it lead to the discovery of evidence that the trial court should have excluded.

After the initial patdown, Officer Siewert testified that he was notified by Officers Massey and King that appellant was attempting to place his hands in the rear of his pants. Appellant was still handcuffed at this point. According to Officer Siewert's testimony, the officers continually ordered him to quit "digging" in his pants. When appellant refused, Officers Siewert and Massey took appellant to a separate room in the video store. It was there that the search of appellant's pants revealed the plastic bag containing rocks of crack cocaine. Officer Siewert testified during the hearing that the reason for the subsequent search was to check for a weapon or any contraband. He stated that, based on his training and experience, when someone has their hands in their pants, it indicates that the person is trying to conceal or possibly destroy evidence.

■ The Court of Criminal Appeals has enumerated many factors, helpful but not conclusive in themselves, to consider in determining whether a search is invalid. *Worthey v. State*, 805 S.W.2d 435, 438 (Tex.Crim.App.1991). Such factors include: (1) no flight or furtive gestures or

sudden movements towards a pocket or other place where a weapon might be concealed; (2) no threats made and no attempt made to resist detention; (3) appellant is not shown to be committing or about to commit any criminal offense; and (4) appellant does not seem to be under the influence of alcoholic beverages or drugs. *See Lippert,* 664 S.W.2d at 721. The *Lippert* case is distinguishable from this case because appellant made several movements towards the rear of his pants. *See Worthey,* 805 S.W.2d at 439. He continued to move his hands toward the back of his pants after being told by officers to remain still. *See id.*

■ Under the circumstances, the scope of the search was also valid. In *Terry v. Ohio,* the Supreme Court stated, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry,* 392 U.S. at 19, 88 S.Ct. 1868 (quoting *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 310, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Fortas, J., concurring)). In *Bell v. Wolfish,* the Supreme Court held that a reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed. 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.; McGee v. State,* 105 S.W.3d 609, 615 (Tex.Crim.App. 2003) (applying this standard in the context of a visual body-cavity search incident to arrest), *cert. denied,* —— U.S. ——, 124 S.Ct. 536, 157 L.Ed.2d 410.

■ As for the scope of the intrusion, we must evaluate whether legitimate interests of law enforcement outweighed the "demeaning, dehumanizing, [and] intrusiveness of a visual body cavity search." *See id.* at 616; *Bell v. State,* —— S.W.3d ——, ——, Nos. 05–00–01291–CR, 05–00–01292–CR, 2003 WL 21100727, at *2 (Tex. App.-Dallas May 15, 2003, pet. ref'd) (classifying very similar search as a visual body-cavity search and reviewing the same factors). In reviewing the manner of the search, we consider, in part, whether the search was violent and whether the officer had experience in conducting such searches. *See McGee,* 105 S.W.3d at 616. The level of justification necessary for the search varies depending on where the search took place. *Id.* at 616–17. Searches in prisons, for instance, require less justification because the suspects in those cases possess a diminished expectation of privacy. *See id.* at 617. Finally, the search must be conducted in a hygienic environment and should not be conducted in a "public place." *See id.*

Here, the search was conducted in a small room with four members of the raid team present. The room was away from public view and from where the other individuals were detained. *See id.* (finding secluded area of fire station sufficient to protect appellant's privacy interests). Officer Siewert testified that he pulled appellant's pants back and observed a piece of plastic protruding from appellant's buttocks. It was only then that Officer Siewert requested appellant pull his pants down and bend over so that Officer Siewert could retrieve the bag. While it may have been an uncomfortable experience for appellant, there is no indication that it was violent in any way. Officer Siewert also testified that it is commonplace for people to conceal their narcotics in this manner. He explained that, based on his training and experience, when someone has their hands in their pants, it indicates someone is trying to conceal or possibly destroy

evidence. We conclude the officer's search was reasonable under the circumstances.

The trial court did not err when it denied appellant's motion to suppress. Accordingly, we overrule appellant's first point of error.

## B. Ineffective Assistance of Counsel

■■■ In his second point of error, appellant contends both of his attorneys provided ineffective assistance during both phases of his trial. Specifically, appellant argues that one member of his defense team was ineffective because she did not object or move for mistrial when the prosecutor allegedly made contact with appellant during her closing argument in the punishment phase. Appellant claims his other attorney provided ineffective assistance when he (1) became confused about how to voir dire a witness; (2) had difficulty understanding the proof required for a felon in possession of a firearm; and (3) spent a portion of his closing argument discussing personal experiences, all of which appellant speculates may have been the result of counsel's medical condition.[5] In addition, appellant alleges both attorneys were ineffective for failing to investigate and failing to call La Tina Mimms as a witness to testify that various firearms found at the video store belonged to her.

■■■ Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.051 (Vernon Supp. 2004). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d

830, 835 (Tex.Crim.App.1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–96, 104 S.Ct. 2052. Moreover, appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App.1998).

■■■ In assessing appellant's claims, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Appellant has the burden to rebut this presumption by presenting evidence illustrating why trial counsel did what he or she did. *See id.* An appellant cannot meet this burden when counsel's actions may have been based on tactical decisions and the record does not specifically focus on the reasons for trial counsel's conduct. *See Bone v. State*, 77 S.W.3d 828, 830 (Tex.Crim.App. 2002). When there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See id.* at 833. If there is no hearing or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

---

5. During trial, counsel requested a brief recess because he felt his glucose dropping and wished to eat something before continuing.

The trial court did not have jurisdiction when it conducted the hearing on appellant's motion for new trial. The trial court signed the judgment convicting appellant of possession with intent to deliver a controlled substance and possession of a firearm by a felon on August 28, 2002. Appellant filed the motion and amended motion for new trial on September 23, 2002. The trial court denied the motion by written order the following day. The trial court then held a hearing on the same motion on January 7, 2003, and again denied the motion.

■■■■■ The procedural provisions governing motions for new trial in criminal cases must be strictly complied with for the trial court to have jurisdiction to consider the motion. *Oldham v. State,* 977 S.W.2d 354, 361 (Tex.Crim.App.1998). According to Texas Rule of Appellate Procedure 21.8, the court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court and, if it does not do so, the motion is overruled by operation of law. *See* TEX.R.APP. P. 21.8(a), (c). In this case, the court overruled the motion within 75 days from when the judgment was signed, but inexplicably held a hearing on the same motion well beyond the applicable time period. Even if the trial court had not ruled on the motion, after 75 days, the trial court loses jurisdiction and cannot rule on the motion. *State v. Garza,* 931 S.W.2d 560, 562 (Tex. Crim.App.1996); *see also Awadelkariem v. State,* 974 S.W.2d 721, 728 (Tex.Crim.App. 1998) (holding that an order granting or denying a motion for new trial may be freely rescinded so long as such action

occurs within the 75 days provided by the rules). Even the claimed deprivation of a constitutional right cannot confer jurisdiction upon a court where none exists. *See Drew v. State,* 743 S.W.2d 207, 225 (Tex. Crim.App.1987); *Hagens v. State,* 979 S.W.2d 788, 791 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). A hearing conducted after the motion for new trial has been overruled by operation of law is not authorized and will not be considered on appeal. *Laidley v. State,* 966 S.W.2d 105, 107–08 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd). Therefore, the hearing on the motion for new trial is not properly before this court.

■■■■■ Without the motion for new trial hearing, the record is silent as to why trial counsel acted as they did. In the face of a silent record, this court will not speculate about why trial counsel did or did not do what appellant alleges. *See Jackson,* 877 S.W.2d at 771. In the absence of any evidence to the contrary, we cannot conclude the performance of appellant's trial counsel was deficient. *See id.* Accordingly, we overrule appellant's second point of error.

## C. Prosecutorial Misconduct

■■■■■ In his third point of error, appellant contends the prosecutor assaulted him during her closing argument in the punishment phase of trial when she (1) turned appellant's chair around and touched him briefly; (2) outlined his suit; and (3) touched his braided hair.[6]

■■■■■ To preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objec-

---

6. Appellant contends the alleged misconduct took place during the following portion of the State's closing argument in the punishment phase:

Now, in voir dire we also talked about and I asked the questions—actually defense coun-

sel asked one of the panel members, what does a drug dealer look like? That panel member said, slicked-back hair, nice suit, nice things. That is Corey Morrison. Slicked-back hair, nice suit. He is a drug dealer.

tion; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. *See* TEX.R.APP. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim. App.1996). Nothing in the record shows that appellant objected or moved for a mistrial when the conduct in question occurred. Because appellant failed to preserve error, we will only review whether the trial court erred when it denied the motion for new trial.

■■■■ It is well established that the trial court has broad discretion to grant or deny a motion for new trial. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). We review the trial court's ruling under an abuse-of-discretion standard. *Id.* We do not substitute our judgment for that of the trial court, but rather determine whether the trial court's decision was arbitrary or unreasonable. *Id.* In assessing the evidence presented at the new trial hearing, the trial judge may properly consider the interest and bias of any witness, and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted. *Reissig v. State*, 929 S.W.2d 109, 113 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd).

■■■ The trial court denied appellant's motion for new trial twice, first by written order on September 24, 2002, and then following the out-of-time hearing on January 7, 2003. Appellant does not challenge the trial court's first order, but instead focuses his analysis on the evidence pre-

sented at the January hearing. As discussed under appellant's second point of error, the trial court lacked jurisdiction when it conducted the hearing on appellant's motion for new trial. Where the court lacks jurisdiction, any action taken on a matter is void and should be regarded as if it never existed. *Hagens*, 979 S.W.2d at 791. Therefore, the record from the motion for new trial hearing is not before this court on appeal.[7] *See id.* Accordingly, appellant's third point of error is overruled.

Having overruled all of appellant's points of error, we affirm the trial court's judgment.

---

7. Even if we were able to consider the record from the hearing, we would not disturb the trial court's ruling. The evidence was inconsistent as to whether the prosecutor touched appellant during her closing statement. While appellant, his wife, and one of appellant's trial attorneys testified that the prosecutor touched appellant, several other witnesses,

including appellant's other trial attorney, the bailiff, the court reporter, and a juror, testified that they did not observe the prosecutor touch appellant. In addition, the trial court had firsthand knowledge of any alleged incident because he presided over the punishment phase.