NO. 07-05-0274-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 28, 2006


______________________________



MICHAEL W. DIXON, 


 

 Appellant


v.



THE STATE OF TEXAS,


 

 Appellee

_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-408,417; HON. JIM BOB DARNELL, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Michael W. Dixon (appellant) appeals his conviction for possessing a controlled
substance. The substance (crack cocaine) was wrapped in plastic and hidden in his mouth. 
The sole issue before us concerns the trial court's refusal to grant his motion to suppress
discovery of the narcotic. Appellant believes that suppression was warranted because the
officer had neither probable cause, reasonable suspicion, nor consent to conduct the
search. We affirm the judgment.

Background


 On August 20, 2004, at 1:56 a.m., Officer Christopher Daniel (Daniel) observed
appellant "staggering" as he walked down a public street. Believing appellant to be
intoxicated, the officer exited his patrol car, approached the suspect, and called him over. 
Appellant replied "okay" but then turned his back to the officer and raised "his hands up to
his upper chest torso area." Daniel continued towards appellant and attempted to speak
with him. However, the latter would not face the officer. Instead, appellant stood sideways
and mumbled his replies to the officer's queries. The officer then frisked appellant's
clothing for weapons. Though finding none, the officer noticed that appellant mumbled due
to his effort to speak through clenched teeth. This lead the officer to believe that appellant
was hiding something in his mouth. At that point, appellant was asked to open his mouth
and stick out his tongue. Appellant exhibited his tongue but kept his mouth closed. The
officer again asked appellant to comply with his request. This time, appellant did, and as
he opened his mouth, the officer noticed that it contained a "tan rock-like substance in
plastic." Daniel believed the substance to be crack cocaine.

 Thereafter, appellant closed his mouth and refused to remove the item from it. In
response, the officer grabbed appellant's lower jaw in effort to prevent the suspect from
biting or chewing the object. Appellant continued to resist, which conduct led to the officer
forcibly subduing him.

 In response to questioning at the suppression hearing, the officer did not state that
he believed appellant held narcotics in his mouth before he actually saw the tan rock-like
substance. Rather, he said that he simply believed that appellant was attempting to
conceal something in his mouth. Daniel also stated that based on his training and
experience, suspects would conceal not only narcotics in their mouths but also weapons,
and the initial frisk of appellant's clothing was undertaken to discover weapons such as
knives and "razor blades." 

The Law and Its Application


 We review the trial court's ruling on a motion to suppress under the standard
announced in Johnson v. State, 68 S.W.3d 644 (Tex. Crim. App. 2002) and Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997). It requires us to give almost total deference
to the trial court's findings of historical fact and review de novo the application of the law
to the facts. Johnson v. State, 68 S.W.3d at 652-53.

 Additionally, it is clear that an officer may temporarily detain an individual if the
totality of the circumstances (and reasonable inferences therefrom) would lead him to
reasonably suspect (in light of his experience and knowledge) that the prospective detainee
had engaged, was engaging in, or was soon to engage in criminal activity. Woods v. State,
956 S.W.2d 33, 38-39 (Tex. Crim. App.1997); Hill v. State, 135 S.W.3d 267, 269 (Tex.
App.-Houston [14th Dist.] 2004, pet. ref'd). And, that the circumstances before the officer
may be as consistent with innocent activity as with criminal activity is of no moment. 
Woods v. State, 956 S.W.2d at 38-39 (holding that the "consistent with innocent activity as
with criminal activity" construct was no longer viable).

 Next, while the detention can be no longer than necessary to effectuate the purpose
of the stop, the officer nonetheless is entitled to conduct a brief and minimally intrusive
investigation. Strauss v. State, 121 S.W.3d 486, 490-91 (Tex. App.-Amarillo 2003, pet.
ref'd). So too may he conduct a limited protective search of the detainee for weapons if he
has a reasonable fear for his safety. Morrison v. State, 132 S.W.3d 37, 45 (Tex.
App.-Houston [14th Dist.] 2004, pet. ref'd). And, whether such a fear exists depends not
upon the officer's subjective belief that the detainee is armed but on whether a reasonably
prudent man under the same circumstances would be warranted in questioning his safety
or that of others. Id. With this said, we turn to the record before us.

 That appellant was staggering alone down a public street after midnight constituted
sufficient articulable facts permitting a temporary detention. Such circumstances would
justify an officer to reasonably suspect that appellant engaged in the criminal offense of
public intoxication. So, Daniel was authorized to approach, detain, and briefly question
appellant for purposes of determining whether appellant was committing that crime. 

 Similarly, a reasonable person in Daniel's position could rationally question his
safety given the time of night and appellant's actions. Again, it was after midnight. 
Appellant turned away after the officer called him, raised his hands to his chest area as if
to conceal something, stood sideways rather than face to face with the officer, and
mumbled through clenched teeth. To this we add the officer's testimony that the weapons
he attempted to search for included "razor blades" and that based on his experience and
training he knew weapons could be concealed in one's mouth. (1) Combined, these
circumstances were sufficient to warrant a request for appellant to open his mouth to dispel
the chance that he was harboring a potentially harmful item in his mouth. Indeed, such a
request would be a minimally intrusive and more efficacious alternative to frisking
appellant's cheeks. See Morrison v. State, 132 S.W.3d at 46 (stating that courts may
consider the scope of the intrusion and the manner in which it was conducted in assessing
the validity of a frisk). (2) 

 Next, seeing the item within appellant's mouth, knowing that individuals hide
narcotics in their mouths, and recognizing the item to be crack cocaine, the officer had
probable cause to arrest appellant and seize the object. See Gonzales v. State, 648
S.W.2d 684, 687 (Tex. Crim. App. 1983) (holding that the officer had probable cause to
arrest the defendant and seize balloons without a warrant, when the officer had knowledge
that individuals transported heroin in their mouth, observed that defendant had trouble
talking, and observed that defendant had balloons underneath his tongue); Barnes v. State,
870 S.W.2d 74, 79 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd) (holding that the officer
had probable cause to arrest and seize an object within appellant's mouth when appellant
mumbled responses to the officer's questions, tissue paper was seen hanging from
appellant's mouth, the officer knew individuals wrapped narcotics in tissue paper, and the
appellant attempted to swallow the item). Daniel was not obligated to first obtain a warrant
or delay seizure. 

 Finally, we disagree with appellant's contention that Hawkins v. State, 853 S.W.2d
598 (Tex. App.-Amarillo 1993, no pet.) controls the outcome here. Much of our decision
in Hawkins was founded upon the "consistent with innocent activity as with criminal activity"
construct. Yet, that construct has since been rejected by the Court of Criminal Appeals in
Woods. So a substantial portion of the legal foundation underlying Hawkins no longer
exists.

 Having reviewed the totality of the circumstances appearing in the record, we
conclude that the trial court had legal and factual basis upon which to overrule appellant's
motion to suppress. Thus, it did not abuse its discretion in doing so. Accordingly, the issue
is overruled and the judgment affirmed.

 

 Brian Quinn

 Chief Justice


Publish. 
1. One can reasonably infer from the size of razor blades that they are small enough to fit in one's
mouth. 
2. That the officer asked appellant to open his mouth after the initial frisk was completed does not
necessarily taint the request. Circumstances can arise which authorize a further pat-down. See e.g. Morrison
v. State, 132 S.W.3d 37, 45-46 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd) (holding that the subsequent
frisk of appellant's rear pants pockets was permissible given appellant's continued effort to place his hands
in them after the initial frisk). Actively and obviously concealing a potentially dangerous object in one's mouth
is such a circumstance.



YLE="font-family: Arial" STYLE="COLOR: #0000ff"> Brian Quinn

 Justice

Publish. 
1. We note that the Reed court relied on the opinion rendered by the Court of Criminal Appeals in
Johnson to reach the conclusion it did. 
2. This invokes scenes from those old movies wherein mysterious individuals in trench coats walk the
streets during foggy, dark nights, encounter individuals at random, and ask "do you have your papers?" If
they do, they are allowed to leave; if they do not, then they are never seen again.