

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00229-CR

MARCUS TERRILL SHED                                                    APPELLANT

V.

THE STATE OF TEXAS                                                           STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two points that each concern the trial court's decision to overrule his evidentiary objections at trial, appellant Marcus Terrill Shed appeals his conviction for possessing two ounces or less of marijuana.[2] We affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Health & Safety Code Ann. § 481.121(a), (b)(1) (West 2010).

**Background Facts**

In the spring of 2010, Fort Worth Police Department (FWPD) Officer Michael Valdez received information from a confidential informant that at a house in Fort Worth, a man named Marcus was involved in selling drugs.[3] Officer Valdez conducted surveillance on the house and saw appellant entering and leaving it. Also, Officer Valdez saw what appeared to be lookouts standing on corners near the house. Appellant looked to be very comfortable while entering and leaving the house, unlike other people who would walk to the house while looking over their shoulders "possibly [for] a patrolman or law enforcement." Because of the high traffic entering and leaving the house, Officer Valdez thought that it was a "dope location," but he did not believe that it was appellant's residence.

After completing a probable cause affidavit, Officer Valdez obtained a search warrant for the house on May 7, 2010. The probable cause affidavit stated, among other facts, that in the previous seventy-two hours, the confidential informant had seen a black male named Marcus, who stood at 5' 10'' and weighed 220 pounds, possessing a large amount of marijuana while inside the house; that Officer Valdez had conducted surveillance on the residence and had seen Marcus coming and going freely from it; and that the confidential informant

---

[3]The FWPD had previously used the same confidential informant. The confidential informant did not conduct a controlled purchase of drugs at the house.

2

had been used in multiple drug investigations and had been able to recognize illegal controlled substances.

Just before officers began executing the search warrant on the day it was issued, as they were approaching the house in a van, appellant exited the house and began briskly walking away from it while looking back over his shoulder. At the same time, two other men started walking away from the house. FWPD Officer Ray Perez detained appellant after appellant had walked beyond the residence's cyclone fence. Appellant told Officer Perez that he had come to the house only to buy "a dime bag of weed." Appellant gave consent for Officer Perez to search appellant's person, and Officer Perez found a plastic baggie containing marijuana. Also, appellant admitted that he had possessed a marijuana cigarette that was on the ground near him. Officer Perez also found $1,320 on appellant's person.

Upon executing the warrant, officers discovered that in the house, there was little furniture, no running water, not much clothing, no food or groceries, no personal items in bathrooms, and no pictures on walls. According to Officer Valdez, the house was "filthy"; it did not appear to Officer Valdez that anyone was living there. In the house, officers found ecstasy, marijuana, cocaine, hydrocodone, and a loaded gun.

A grand jury indicted appellant with possessing between four ounces and five pounds of marijuana.[4]  Appellant retained counsel and pled not guilty.  At trial, appellant objected, on constitutional grounds, to testimony concerning evidence found by officers inside the house and on his person, but the trial court overruled these objections without specifying its reasons for doing so.  After considering the evidence and arguments presented by the parties, the trial court found appellant guilty of possessing less than two ounces of marijuana (a lesser-included offense of his indicted charge)[5] and sentenced him to 120 days' confinement.  Appellant brought this appeal.

**The Propriety of Appellant's Temporary Detention**

In his first point, appellant argues that the trial court erred by overruling his objection to the admission of evidence found on his person by Officer Perez. Appellant contends that Officer Perez found the evidence while illegally detaining him without a warrant and that his subsequent arrest was also unlawful.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[6]  *Amador v. State,* 221 S.W.3d 666, 673 (Tex.

---

[4]*See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(3).

[5]*See Leach v. State,* 35 S.W.3d 232, 237 (Tex. App.—Austin 2000, no pet.).  The trial court explained that it could not find beyond a reasonable doubt that appellant was linked to the controlled substances in the house.

[6]Appellant did not file a pretrial motion to suppress evidence, but at trial, he objected, on federal and state constitutional grounds, to the introduction of evidence of the search of himself or of the search of the house.  On appeal, appellant has characterized his trial objections as a motion to suppress.

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the record is silent on the reasons for the trial court's ruling, we imply the necessary fact findings that would support the ruling if the evidence, viewed in the light most favorable to the ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV (mandating that the

Appellant has not, however, separately briefed federal and state constitutional arguments.

5

"right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated"); *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

The State contends that Officer Perez justifiably detained appellant because appellant was "seen fleeing a location known to police as a drug house as a search warrant was being served on the residence." In *Michigan v. Summers*, just before police officers began executing a warrant at a home to search for narcotics, they saw Summers leaving the home, requested his assistance in entering the home, detained him, and eventually found heroin in his coat pocket. 452 U.S. 692, 693, 101 S. Ct. 2587, 2589 (1981). Summers, who was charged with possessing the heroin, argued that his initial detention violated his Fourth Amendment rights, and the Supreme Court phrased the dispositive

6

question in the case as whether "the initial detention of [Summers] violated his constitutional right to be secure against an unreasonable seizure of his person." *Id.* at 694, 101 S. Ct. at 2590. The Supreme Court held that the police had not violated Summers's rights, explaining,

> Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself. . . .

> In assessing the justification for the detention of an occupant of premises being searched for contraband pursuant to a valid warrant, both the law enforcement interest and the nature of the "articulable facts" supporting the detention are relevant. Most obvious is the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Less obvious, but sometimes of greater importance, is the interest in minimizing the risk of harm to the officers. Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation. Finally, the orderly completion of the search may be facilitated if the occupants of the premises are present. . . .

> . . . .

> . . . If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

7

*Id.* at 701–05, 101 S. Ct. at 2593–95 (footnotes and citation omitted).

Citing *Summers*, the Supreme Court recently reiterated that even when police officers do not have reasonable suspicion, or any suspicion, that a particular individual has been involved in criminal activity, they may detain that individual incident to the execution of a proper search warrant as long as the individual is found within or immediately outside a residence at the moment the officers execute the warrant. *Bailey v. United States*, 133 S. Ct. 1031, 1037–38, 1042 (2013); *see also Muehler v. Mena*, 544 U.S. 93, 98, 125 S. Ct. 1465, 1470 (2005) ("An officer's authority to detain incident to a search is categorical . . . . Thus, Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search [a residence] and she was an occupant of that address at the time of the search.").[7] The Court in *Bailey* restated that "three important law enforcement interests . . . justify the detention of an occupant who is on the premises during the execution of a search warrant: officer safety, facilitating the completion of the search, and preventing flight." *Bailey*, 133 S. Ct. at 1038. The Court also stated that in determining whether an individual is in the "immediate vicinity" of a premises to be searched and is therefore subject to the categorical rule of *Summers* that allows detention, courts should consider "the lawful limits of the premises, whether the occupant was

---

[7]In *Summers*, the Court emphasized that the rule from that case does not depend on an ad hoc determination about the extent of the intrusion caused by the seizure or the quantum of proof justifying the detention. 452 U.S. at 705 n.19, 101 S. Ct. at 2595 n.19.

8

within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." *Id.* at 1042.

Texas courts have applied *Summers* to uphold temporary detentions that are incident to the execution of search warrants. *See Morrison v. State*, 132 S.W.3d 37, 43–44 (Tex. App.—Houston [14th Dist.] 2004, pets. ref'd); *see also Babalola v. State*, No. 10-09-00234-CR, 2011 WL 1419752, at *4 (Tex. App.—Waco Apr. 13, 2011, pet. ref'd) (mem. op., not designated for publication).

We conclude that the rule that the Supreme Court established in *Summers* and repeated and clarified in *Bailey* justified Officer Perez's temporary detention of appellant because appellant was at the front door of the house subject to the warrant immediately prior to the execution of it and was detained in the house's immediate vicinity.[8] *See Bailey*, 133 S. Ct. at 1037–38, 1042; *Summers*, 452 U.S. at 704–05, 101 S. Ct. at 2595. The evidence established that as officers approached the house, they saw appellant, along with two other men, on the front porch; appellant was "just closing the door behind [him]." Appellant looked at the officers' van and began quickly walking away from the house by crossing a driveway and by going onto a street. The police detained the other two men in the front yard of the residence. Officer Perez, after receiving information about appellant from a radio call, saw him "walking by the residence, and at that point

---

[8]In his argument, appellant appears to concede that Officer Perez's initial interaction with him was a temporary detention; appellant does not argue that the interaction qualified as a formal arrest.

9

detained him" outside the fence of the residence, at the corner of intersecting streets.[9] Without oral prompting from Officer Perez, appellant stated that he had gone to the house to buy "weed," directed Officer Perez's attention to a marijuana cigarette on the ground, and said that the cigarette belonged to him. Appellant then gave Officer Perez consent to search appellant's person, and Officer Perez found a baggie containing marijuana.[10]

Appellant cites several cases to argue that the rule from *Summers* did not justify his detention because he was "not on the premises" when he was detained.[11] For example, in *United States v. Sherrill*, a federal appellate court declined to apply *Summers* to authorize the police's detention of a defendant who had left the residence subject to a search warrant and had driven a car "off the premises" to a location that was a block away from the home. 27 F.3d 344, 345–46 (8th Cir.), *cert. denied*, 513 U.S. 1048 (1994). Similarly, in *United States v. Edwards*, another federal appellate court refused to apply *Summers* to a defendant who the police seized three blocks away from the search. 103 F.3d

---

[9]The house subject to the warrant was on a corner lot. The parties agree that Officer Perez detained appellant within fifteen feet of the residence.

[10]Appellant does not expressly challenge the admissibility of the statements that he made to Officer Perez during the detention or the voluntariness of the consent to search that he gave to Officer Perez.

[11]This is the crux of appellant's argument in his first point. He does not particularly argue that any distinction between the means of seizure in *Summers* (or its progeny) as compared to the means of seizure in this case (which occurred by a display of force) requires the application of a different rule.

90, 93–94 (10th Cir. 1996). Finally, nearly thirty years ago, our court of criminal appeals held that *Summers* did not justify the combined detention and subsequent search of a defendant when the defendant arrived at the residence fifteen to thirty minutes after the execution of the warrant and was therefore not an "occupant" of the residence. *Lippert v. State*, 664 S.W.2d 712, 715, 720–21 (Tex. Crim. App. 1984). All of these cases are distinguishable because in this case, at the precise time of the execution of the search warrant, Officer Perez detained appellant while appellant was walking "by the residence," just outside the residence's fence. *Cf. Babalola*, 2011 WL 1419752, at *4 (applying *Summers* when the police detained a defendant "in the entryway to [his] apartment complex, approximately 200 feet from his apartment"); *Morrison*, 132 S.W.3d at 43–44 (distinguishing *Lippert* and applying *Summers* when the defendant was at the location subject to the warrant at the time of the warrant's execution).

Because we hold that the principle discussed in *Summers* and in *Bailey* justified Officer Perez's temporary detention of appellant without particularized suspicion of appellant's involvement in criminal activity, we overrule appellant's first point.[12]

---

[12]Therefore, we decline to address whether Officer Perez had reasonable suspicion of appellant's criminal activity, which could alternatively justify appellant's temporary detention. *See* Tex. R. App. P. 47.1; *Smith v. State*, 316 S.W.3d 688, 700 n.2 (Tex. App.—Fort Worth 2010, pet. ref'd).

## The Facts Supporting the Search Warrant

In his second point, appellant contends that the trial court erred by overruling his evidentiary objections because the search warrant for the house was not supported by probable cause.[13] In the trial court, appellant contended that Officer Valdez's affidavit did not establish probable cause to support the warrant because the affidavit did not establish that the confidential informant was credible and reliable and because Officer Valdez had not corroborated the facts provided by the informant.

A search warrant cannot issue unless it is based on probable cause as determined from the four corners of an affidavit. U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 18.01(b) (West Supp. 2012) ("No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance."); *see Farhat v. State*, 337 S.W.3d 302, 305 (Tex. App.—Fort Worth 2011, pet. ref'd).

Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate in an affidavit, there is at least a fair probability or substantial chance that evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)

---

[13]We will assume, without deciding, that appellant had a legitimate expectation of privacy in the house and therefore had standing to challenge the warrant. *See Villarreal v. State*, 935 S.W.2d 134, 138–39 (Tex. Crim. App. 1996).

12

(citing *Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13, 103 S. Ct. 2317, 2332, 2335 n.13 (1983)).  Probable cause "does not require that, more likely than not, the item or items in question will be found at the specified location."  *Id.*  In determining probable cause, the magistrate may "interpret the probable cause affidavit in a non-technical, common-sense manner[,] and he may draw reasonable inferences from it."  *Id.*

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant to determine whether the magistrate had a substantial basis for concluding that probable cause existed.  *State v. McLain*, 337 S.W.3d 268, 271–72 (Tex. Crim. App. 2011); *Flores*, 319 S.W.3d at 702 (stating that the magistrate's decision should "carry the day in doubtful or marginal cases"); *see Farhat*, 337 S.W.3d at 306 ("No magical formula exists for determining whether an affidavit provides a substantial basis for a magistrate's probable cause determination.").  Like the trial court, we should review the affidavit supporting the warrant in a commonsense, realistic manner.  *Farhat*, 337 S.W.3d at 306; *Hogan v. State*, 329 S.W.3d 90, 93 (Tex. App.—Fort Worth 2010, no pet.) ("A reviewing court should not invalidate a warrant by interpreting the affidavit in a hypertechnical manner.").  The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; instead, we focus on the combined logical force of facts that are in the affidavit.  *Hogan*, 329 S.W.3d at 94; *see Nichols v. State*, 877 S.W.2d 494, 498 (Tex. App.—Fort Worth

13

1994, pet. ref'd) ("A warrant is not invalid merely because the officer failed to state the obvious.").

The four corners of Officer Valdez's affidavit demonstrate that he received information from a "reliable and confidential informant" that a black male named Marcus was distributing marijuana from the house. According to the affidavit, the same informant had, in the past, been used in multiple drug investigations, and substances that the police had seized in those previous investigations had been tested by a "qualified Fort Worth Police Department Chemist [who had found them] to be illegal substances."

The affidavit stated that the informant had "point[ed] out the . . . residence" to Officer Valdez. Also, the affidavit explained that the informant had been inside the house within the last seventy-two hours and had seen Marcus "in possession of a large quantity" of marijuana that was "packaged in a way meant for sale and distribution." Furthermore, the affidavit explained that through Officer Valdez's training and experience, he knew that it was common for "actors involved in the illegal distribution of narcotics to utilize residences to store and maintain drugs"; that during surveillance, Officer Valdez saw Marcus "come and go freely" from the house; and that Officer Valdez also saw a male standing in the front of the house and walking up and down the street while acting like a lookout.

Appellant principally contends that the information contained in the affidavit was insufficient to establish probable because it came "entirely from an informant

whose credibility and reliability [was not] proven" and because the police did not corroborate the informant's tip. We have explained,

> The informant's reliability or basis of knowledge is relevant in determining the value of his assertions. Corroboration of the details of an informant's tip through independent police investigation can also be relevant in the magistrate's determination of probable cause. Likewise, the affidavit should set forth the foundation for the officer's belief in an informant's credibility and veracity. However, "a deficiency in one may be compensated . . . by a strong showing as to the other, or by some other indicia of reliability," all of which are relevant considerations under the totality of the circumstances.

*Davis v. State*, 144 S.W.3d 192, 197–201 (Tex. App.—Fort Worth 2004, pet. ref'd) (op. on reh'g) (citations omitted) (holding that an affidavit did not establish probable cause when the informant had not previously given information to a law enforcement agency, the affidavit did not establish the basis for a conclusion that the informant knew what marijuana looked like, and the police had not conducted a sufficient independent investigation to corroborate the informant's tip).

Contrary to appellant's position, we conclude that the combined logical force of the facts in Officer Valdez's affidavit established the informant's credibility by showing that the informant had been used in multiple investigations, that the informant's ability to recognize illegal substances had been confirmed, and that the informant's work on the previous investigations had led to the seizure of illegal substances such as heroin, cocaine, and marijuana.[14]  *See*

---

[14]In the sentence following a statement that illegal substances had been seized in investigations in which the informant had provided a tip, the affidavit states, "The reliable and confidential informant has been used in various drug investigations in the past which have included such drugs as heroin,

15

*Vafaiyan v. State*, 279 S.W.3d 374, 384 (Tex. App.—Fort Worth 2008, pet. ref'd) ("Informant hearsay may be credited by showing that the informant has given reliable, credible information in the past, *or* by police corroboration.") (emphasis added); *Pool v. State*, 157 S.W.3d 36, 45 (Tex. App.—Waco 2004, no pet.) (mem. op.) ("All that is required is a statement that the informant has provided information in the past regarding narcotics trafficking, and that information proved correct."); *see also Alegria v. State*, No. 02-03-00187-CR, 2004 WL 1067780, at *2 (Tex. App.—Fort Worth May 13, 2004, pet. ref'd) (mem. op., not designated for publication) (holding that an affidavit established the informant's credibility when it stated that the informant had "previously provided information that [had] led to the arrests of individuals for possession of a controlled substance and [had] displayed the ability to accurately identify cocaine); *Bonner v. State*, Nos. 02-03-00003-CR, 02-03-00004-CR, 2004 WL 726840, at *2 (Tex. App.—Fort Worth Apr. 1, 2004, pets. ref'd) (not designated for publication) (holding similarly).

Viewing the facts expressed in Officer Valdez's affidavit cumulatively and in a commonsense manner, we conclude that they gave the magistrate a substantial basis to conclude that there was a fair probability or substantial

---

methamphetamine ('ice'), cocaine, [and] marijuana." We conclude that the magistrate could have reasonably inferred from this statement that as a result of the informant's tips, the police had seized heroin, methamphetamine, cocaine, and marijuana. *See McLain*, 337 S.W.3d at 273 (indicating that reviewing courts should not read sentences of affidavits in isolation).

16

chance that evidence of a crime—the possession or distribution of illegal controlled substances—would be found at the house. *See Flores*, 319 S.W.3d at 702. Thus, we uphold the trial court's determination that probable cause supported the warrant, and we overrule appellant's second point.

## Conclusion

Having overruled appellant's points, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 20, 2013